THE ST. LOUIS & SAN FRANCISCO RAILROAD COM-
PANY V. ROBERT MCMINN.

No. 14,365.     (84 Pac. 134.)

RAILROADS — *Injury to Employee* — *Contributory Negligence.*
Plaintiff was working as a section-hand at a crossing where
there were parallel tracks. All ingoing trains ran over the
east track, and all outgoing trains ran over the west track.
The plaintiff knew that about twenty-five trains daily passed
either way. He was warned that a train was approaching,
and stepped between the tracks, but stood close to the east
track, upon which another train was due. He was familiar
with the surroundings, and knew that north-bound trains
used the east track. There was space between the tracks to
avoid danger from passing trains. Plaintiff had good hear-
ing and eyesight, and had time to look for approaching trains
on the east track, but did not do so. While standing with
his back to the south he was struck by a north-bound train
and injured. Under the facts as specially found by the jury
the denial of defendant's motion for judgment thereon was
held erroneous.

Error from Johnson district court; WINFIELD H.
SHELDON, judge. Opinion filed December 9, 1905. Re-
versed.

*Pratt, Dana & Black,* and *L. F. Parker,* for plaintiff
in error.

*A. Smith Devenney,* and *John T. Little,* for defend-
ant in error.

*Per Curiam:* This is an action for damages on ac-
count of a personal injury received by the defendant in
error while in the employment of the plaintiff in error
as a section-hand, on April 15, 1902, in Kansas City,
Mo. Action was brought against the plaintiff in error
in Johnson county, Kansas, where a recovery was had,
and the plaintiff in error is here asking that the judg-
ment be reversed. There are many questions pre-
sented, but the conclusion reached by this court makes
it unnecessary to consider more than one.

The injury complained of occurred at a street-crossing where there were four tracks over which trains were run; all trains going into the union depot were run on the east track, and all coming out ran on the west track.

The defendant in error, and the crew with which he was working, were engaged in removing old ties from under the west track and replacing them with new ties. Trains passed so frequently that it became a custom for the foreman of the crew to watch for trains and warn the workmen thereof in time for them to escape injury. Upon the trial the jury returned special findings of fact, answered at the request of the plaintiff, which read:

"(9) Ques. Did or did not the foreman warn and signal plaintiff to leave his work on the west track on that day? Ans. Yes.

"(10) Q. If you answer the last question 'yes,' then state if plaintiff understood the signal for him to go to the east between the tracks. A. Yes."

"(12) Q. Did or did not plaintiff immediately obey said signal and warning? A. Yes.

"(13) Q. While plaintiff was going from the west track to the east track did he or did he not look in both directions and listen for approaching trains? A. Yes.

"(14) Q. If you answer the last question 'yes,' then state if he saw or heard any train approaching him on the east track. A. No.

"(15) Q. Did or did not the plaintiff inadvertently and unintentionally, when under more or less excitement and fear, stop too near the west rail of the east track? A. Yes.

"(16) Q. If you answer the last question 'he did,' then state if while standing there he did or did not look and listen for approaching trains. A. He did not."

"(27) Q. If you answer question 22 'yes,' then state at what rate of speed were said engine and train of passenger-cars running over said public crossing, per hour, when the same collided with and injured plaintiff. A. Twenty-five miles per hour.

"(28) Q. At what rate of speed per hour was that freight-train then running on the west track over and upon said crossing? A. Ten miles per hour.

"(29) Q. Were said trains then and there going in opposite directions? A. Yes."

The jury returned special findings of fact, answered at the request of the defendant, which read:

"(1) Ques. Did a train strike Robert McMinn on April 15, 1902? Ans. Yes."

"(3) Q. By what company was said train operated and in whose employ were the persons in charge of the engine and the train No. 134? A. Kansas City, Clinton & Springfield Railway Company.

"(4) Q. How many tracks were at the place where plaintiff was injured? A. Four.

"(5) Q. What was the distance from the center of one main track to the center of the other main track? A. About fourteen feet.

"(6) Q. What was the distance between the inside rails of the two main tracks? A. About eight feet and six inches."

"(9) Q. What was the distance in the clear for a person to stand in with a freight-car on one track and a passenger-coach on the other? A. About four feet and six inches.

"(10) Q. How long had plaintiff been working for defendant as a section-man? A. About six weeks.

"(11) Q. Did he know that defendant's track, where he was working and had been working, was a double track? A. Yes.

"(12) Q. How frequently did trains pass going either way on defendant's double track at the point of the accident? A. About twenty-five trains per day.

"(13) Q. Was this fact known to plaintiff? A. Yes.

"(14) Q. On which track was plaintiff working at the time he was hurt? A. West track.

"(15) Q. Which train passed upon this track? A. Freight- or drag-train.

"(16) Q. Did the transfer or freight-train pass plaintiff or arrive at the point of the accident before the passenger-train? A. It arrived and partly passed.

"(17) Q. Did not defendant's foreman warn plaintiff of the approach of the transfer or freight-train? A. Yes.

"(18) Q. What position did plaintiff take after being notified of the approach of the transfer or freight-train? A. Between the tracks.

"(19) Q. What position did all the other section-men, with the exception of the foreman, take with reference to the double tracks? A. Outside of the main tracks.

"(20) Q. How near did plaintiff stand to the out-going track as the outgoing freight-train or transfer passed? A. About six and one-half to seven feet.

"(21) Q. How near did he stand to the east or incoming track? A. About eighteen inches.

"(22) Q. Was there sufficient room for a person to stand between the two tracks when there was a pas-senger-train on the incoming track and a freight or transfer passing on the outgoing track? A. Yes.

"(23) Q. Did not section foreman Thomas Carter stand between the two tracks, when the trains were passing, without being hurt? A. Yes.

"(24) Q: How far could plaintiff have seen the in-coming train if he had looked in time? A. About 150 feet.

"(25) Q. Did plaintiff have time to take a position outside of both tracks when first notified by the section foreman? A. Yes.

"(26) Q. If plaintiff had looked in time could he not have seen the incoming train in time to have passed over the east or incoming track in time to have avoided being hurt? A. Yes."

"(32) Q. How far could plaintiff have seen the engine of the passenger-train on the incoming track, if he had looked in time, before he was struck? A. One hundred and fifty feet.

"(33) Q. Did plaintiff see the engine of the pas-senger-train on the incoming track before he was struck? A. No.

"(34) Q. What movement, if any, did plaintiff make toward the incoming track at the time he was injured and just before he was struck? A. He turned.

"(35) Q. What direction was plaintiff facing when he first took a position between the two tracks? A. West.

"(36) Q. What direction was plaintiff facing at the time he was struck? A. North.

"(37) Q. What effort did plaintiff make, if any, in order to avoid being struck? A. None; had n't time.

"(38) Q. Was plaintiff engaged in any work at the time he was struck? A. No.

"(39) Q. How far west or toward the outgoing track would plaintiff have had to move in order to clear the engine on the incoming track? A. About three feet.

"(40) Q. Was plaintiff's hearing and eyesight good? A. Yes.

"(41) Q. What, if anything, was there to prevent plaintiff from crossing over the east track to a place of absolute safety before he was struck? A. Nothing.

"(42) Q. In how many seconds could plaintiff, in the exercise of ordinary care, after he left the west track, have moved across the east track to a place of safety? A. About ten seconds."

"(44) Q. Was this about the usual time for train No. 134 of the Kansas City, Clinton & Springfield railway to pass the point of the accident? A. Yes.

"(45) Q. Was plaintiff familiar with the time when train 134 of the Kansas City, Clinton & Springfield railway should pass? A. No.

"(46) Q. How much of the transfer train or drag had passed plaintiff when plaintiff was struck? A. Half.

"(47) Q. How many cars were there in defendant's transfer train or drag, and what was the approximate length of the train? A. About ten cars; about 450 feet.

"(48) Q. What was the speed of the transfer train or drag? A. About ten miles per hour.

"(49) Q. Did defendant's foreman give plaintiff notice or warning of the approach of the transfer train or drag in ample time for plaintiff to get out of the way of same? A. Yes.

"(50) Q. How much time elapsed from the time plaintiff left the west track before he was struck by train 134 of the Kansas City, Clinton & Springfield railway on the east track? A. About fifteen seconds."

"(52) Q. Was the warning which the foreman gave to plaintiff of the approach of the drag or transfer train on the outgoing or west track given in the usual and ordinary way? A. Yes."

"(56) Q. If, instead of standing and looking at the freshly painted cars in the transfer train, plaintiff had been looking up the east track toward Rosedale could he have seen train No. 134 in time to have reached a place of safety in the exercise of ordinary care? A. Yes.

"(57) Q. Did plaintiff know that only north-bound trains ran on the east or 'in-bound' track? A. Yes."

The plaintiff in error claims that these findings of fact show that the plaintiff in the district court was guilty of contributory negligence, and that the court erred in refusing to direct a verdict for the defendant thereon. We think this contention is correct. It appears from these findings that the defendant in error was familiar with the whole situation. He knew as well as the foreman the number of trains liable to pass, the time of passing, and that those coming in would be on the east track and those going out on the west track. He knew the distance between the tracks and between cars of trains as they met and passed. On the occasion in question he was warned in ample time to have reached a place of safety. He stopped close to the track upon which he knew a train might come at any time and upon which one was then due. While heedlessly standing in this place of known danger, instead of looking in the direction from which a train was expected, as any prudent person would, he turned his back in that direction and looked the other way. He had good hearing and eyesight. He was voluntarily in a place of known danger and received an injury.

A person cannot disregard his own safety and recklessly encounter danger, and then recover damages for ·injuries sustained thereby, even though the injury was the result in part of the negligence of another.

The motion of plaintiff in error for judgment on the findings of the jury ought to have been allowed.

The judgment of the district court is reversed and the court directed to enter judgment for the plaintiff in error for costs.